# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| Johnnie Williams, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 9:15-cv-1118-PMD-MGB |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Lance Corporal Kyle Strickland and | ) | |
| Raymond S. Heroux, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on each Defendant's motion for summary judgment (ECF Nos. 170 & 171). For the reasons set forth herein, both motions are denied.

## BACKGROUND

This 42 U.S.C. § 1983 action is based on Williams' allegations that officers from the Beaufort County Sheriff's Office used excessive force against him when they arrested him on June 29, 2012. According to Williams' second amended complaint, he and his son were traveling from Savannah, Georgia to Beaufort, South Carolina to visit a family member. Williams stopped for gas when he and his son arrived in Beaufort. While at the gas station, Anthony Ancrum asked Williams for a ride to the Canal Street Apartments, and Williams agreed. Ancrum got in the back seat because Williams' son was in the front seat. Once he arrived at the apartments, Williams alleges that Defendants opened fire on his car without warning, firing from multiple directions. He states that he was struck in the back by a bullet, that he panicked, and that he briefly lost control of his vehicle as a result of his fear and his wound.

Defendants allege the following additional details in support of their motion. According to them, officers Strickland, Criddle, and Heroux[1] were assigned to a drug task force and were working on June 29, 2012. Around 9:00 PM, Heroux saw Williams' car and ran the registration tag through Beaufort County Dispatch. He learned that the tag had been stolen, and was told to stop Williams' car. When Williams turned into the Canal Apartments where Ancrum lived, Heroux activated his blue lights and siren. Williams initially stopped, and then drove toward the rear of the apartment complex. Williams then stopped the car in a parking space and Heroux got out of his car and approached the driver's door. Strickland and Criddle arrived at the scene and also got out of their vehicle. When Heroux was ten feet away from Williams' car, the Williams looked at Heroux, turned the wheels to the right, and quickly reversed his car, causing the front end of the car to violently whip around in Heroux's direction. Heroux stepped back toward his car and claims that he believed Williams was trying to run him over. Heroux drew his duty weapon and started to approach Williams' car again. Strickland also started walking up to the car at the same time. Williams then swerved towards Heroux, straightened out the car, and then accelerated toward Strickland. Heroux claims to have believed Strickland's life was in danger and fired three or four times at Williams. Strickland also fired three or four shots, allegedly into the front windshield.

After the shooting was over, Williams' car crashed into a small tree and the engine stopped. The officers approached the vehicle and saw that Williams and Ancrum had been shot. The officers handcuffed Williams and Ancrum, and Williams asked them why they had shot him. Heroux responded, saying that Williams had tried to kill him by running him over. While

---

1. Heroux was not named in Williams' first amended complaint and was therefore terminated as a party to this action. After the Court adopted the Magistrate Judge's Report and Recommendation on March 10, 2017, the Court appointed counsel for Williams. His counsel then moved to amend the complaint to again name Heroux as a party. The Court granted that motion on June 9, and Heroux is now a party once again.

Williams claimed not to have tried to run Heroux over, Ancrum stated, "Yeah you did!" (Mot. Summ. J., Statement Cpl. Raymond S. Heroux, Beaufort County Sheriff's Office, ECF No. 170-5, at 2.) The South Carolina Law Enforcement Division ("SLED") took Heroux's and Strickland's duty weapons at the scene, and Williams and Ancrum were transported to the hospital.

## LEGAL STANDARD

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## DISCUSSION

The Court will address each Defendant's motion in turn, except when the two motions overlap. First, however, the Court sets forth the legal framework for its analysis.

3

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). An excessive force claim brought under § 1983 implicates the Fourth Amendment, which governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person. *Schultz v. Braga*, 455 F.3d 470, 476-77 (4th Cir. 2006) (citing *Graham v. Conner*, 490 U.S. 386, 388 (1989)).

It is well-settled that an arrest "by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The reasonableness of a search is analyzed "by balancing the extent of the intrusion against the need for it." *Id.* at 7-8. Fourth Amendment claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard. *Graham*, 490 U.S. at 399 (citations omitted); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010). A court's determination of what is objectively reasonable depends on the conditions that exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham*, 490 U.S. at 396. "[R]easonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight." *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007) (citing *Graham*, 490 U.S. at 396-97; *Milstead v. Kibler*, 243 F.3d 157, 163 (4th Cir. 2001)). When determining objective reasonableness, a court must consider "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Garner*, 471 U.S. at 8-9. Thus, the court must "focus on the facts and circumstances of each case, taking into account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

4

he is actively resisting arrest or attempting to evade arrest by flight.'" *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) (quoting *Graham*, 490 U.S. at 396).

Heroux and Strickland also assert that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether a government official is entitled to qualified immunity is a two-step process. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citing *Saucier*, 533 U.S. at 201).

The Court addresses Strickland's motion first. He argues that the evidence shows he did not fire the shot that hit Williams, that it was objectively reasonable to use deadly force under the circumstances, and that, in the alternative, he is entitled to qualified immunity. Strickland bases his arguments on judicial estoppel—contending that Williams is precluded from asserting facts that differ from the facts he ratified when he agreed to plead guilty to criminal charges arising out of this incident.

"When a party attempts to assert a position that is inconsistent with a prior position that the party has successfully asserted in another court, courts have a number of steps that they may take to prevent such an attempted abuse of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). To prove judicial estoppel, "the party sought to be estopped must be

seeking to adopt a position that is inconsistent with a stance taken in prior litigation," *id.* at 224, "the prior inconsistent position must have been accepted by the court," *id.*, and "the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage,'" *id.* (quoting *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982)). However, "courts will not apply judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" *Id.* (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26 (1995)).

Williams pled guilty on November 14, 2016, to three separate charges of assault and battery. During that plea, the solicitor summarized the facts that gave rise to the charges against Williams. The bulk of those facts are set forth above, but Strickland notes several specific facts for purposes of judicial estoppel. Specifically, Strickland points out the following facts that Williams affirmed were true and correct during his guilty plea:

> Mr. Williams made a very deliberate turn towards Sergeant Heroux as he was trying to drive away. This caused Sergeant Heroux to be in fear for his life and it did appear that he was trying to hit him. Officer Heroux then did tell Officer Strickland and Officer Criddle who were on a separate side to watch out. Mr. Williams then put his car in drive again and then did drive towards Mr. Strickland and Mr. Criddle. They did [sic]– he did not hit them although it appeared he was trying to. He drove past them and **at this point** the officers had their weapons drawn and did fire several shots at the vehicle.

(Mot. Summ. J., Ex. D., Tr. R., ECF No. 171-5, at 5–6 (emphasis added).) Strickland maintains that Williams' affirmation of these facts directly undermines his account that he was fired upon for no reason and also undermines Williams' contention that Strickland and Heroux were not in danger at the time they shot into his car. In contrast, Williams points out that the solicitor's statement of facts does not specify critical facts—including Williams' location, as well as the officers' respective locations, at the time the officers fired their weapons.

Because Williams did not affirm any location-related facts, much less inconsistent facts, at his guilty plea, he cannot be judicially estopped from asserting a position he never affirmed. Moreover, a plain reading of the solicitor's statement indicates that the officers only fired their shots after Williams drove past them. This fits squarely within Williams' theory. However, the Court does conclude that Williams is judicially estopped from contesting the facts set forth in the first five sentences of the above-quoted paragraph because Williams now seems to argue that he was attacked by the officers out of the blue, the circuit court judge accepted Williams' prior statements at his guilty plea to his significant benefit,[2] and allowing him to change positions would give him an unfair advantage in this action.[3]

The Fourth Circuit uses a totality of the circumstances test when evaluating the reasonableness of the use of deadly force under the Fourth Amendment, and looks to "the information available to the [officers] 'immediately prior to and at the very moment they fired the . . . shots.'" *Hensley v. Price*, 876 F.3d 573, 582 (4th Cir. 2017) (quoting *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)). As just set forth above, Williams is not estopped from arguing that Strickland was no longer in danger at the time that he shot at Williams' car because Williams did not affirm any facts related to Strickland's positioning during his guilty plea. Because Williams is not judicially estopped from asserting his argument that the officers used excessive force against him because he had passed them by the time they started shooting, the Court proceeds to its analysis of that argument.

---

2. Williams' potential sentence was reduced from a possible thirty years for a charge of attempted murder to a maximum of ten years for assault and battery.

3. The Court makes this determination mindful that judicial estoppel is to be narrowly and cautiously applied. *Lowery*, 92 F.3d at 224.

7

Although the Court recognizes that Williams has offered little affirmative factual evidence himself,[4] he has identified testimony from both Strickland and Heroux that supports his view that Strickland and Heroux were not in danger at the time they fired on him. As a result, the Court denies Strickland's motion for summary judgment. Williams' theory of Strickland's liability is that Strickland's shots caused Heroux to believe that Williams was attempting to run over Strickland, which in turn caused Heroux to fire the shots that injured Williams. As a result, Williams contends that his injuries are attributable to Strickland as well as Heroux because Strickland's decision to shoot was not reasonable under the circumstances. The Court concludes that Williams has established a genuine issue of material fact as to whether Strickland's shots were a proximate cause of his injury.

Williams also contends that there is a genuine issue of material fact as to whether or not Strickland himself shot him. The Court agrees with Strickland that such an inference is unreasonable in light of the undisputed medical evidence that Williams was shot from behind. Although Strickland's precise location remains in dispute, it is clear that he was not in a position to shoot Williams from behind. Heroux testified that "Kyle had already started – Kyle started shooting and I started shooting almost instantaneously." (Mot. Summ. J., Ex. 1, Heroux Dep., ECF No. 170-2, at 9.) He stated that he was not concerned about shooting Strickland because Strickland was off to the side of Williams' car. Heroux also testified about Strickland's position as follows: "[w]here he was, I don't know exactly . . . So all I can tell you is that it appears that the car may have passed Kyle or was passing Kyle and I started shooting." (*Id.* at 14.) Moreover, he also testified that Strickland was not in his line of fire. Drawing all reasonable inferences from the facts in the record in Williams' favor, the Court cannot grant Strickland

---

4. The Court is aware that this is in large part due to the fact that Williams was not deposed until February 19, 2018, at which point he denied all recollection of the incident.

summary judgment on the basis that his actions were objectively reasonable. Based on Heroux's testimony set forth above, Williams' car was passing or had passed Strickland at the time Heroux started shooting. Because Heroux also testified that he started shooting at the same time as Strickland, there is a genuine issue of material fact as to whether Strickland remained in harm's way. Moreover, Heroux's testimony that Strickland was not in his line of fire further supports an inference that Strickland was not in front of Williams' vehicle and in danger of being struck. As set forth above, there is a genuine dispute of material fact as to where Strickland was located and thus whether he was in danger of being run down. As discussed further below, the Court also denies Strickland's motion for summary judgment on the ground that he is entitled to qualified immunity because the law was not clearly established at the time of this incident.

Heroux also argues that he is entitled to summary judgment for his actions during this incident. He makes three arguments: (1) that his conduct was objectively reasonable under the circumstances; (2) that there is no precedent that clearly establishes that his actions violated Williams' Fourth Amendment rights under these circumstances; and (3) that the three-year statute of limitations bars Williams' action against him. The Court will address each contention in turn.

Heroux's argument that his conduct was objectively reasonable is entirely based on his contention that Strickland was in danger and that he fired on Williams in an effort to protect him. Importantly, though Heroux himself was the subject of two of Williams' potentially life-threatening maneuvers, the Court only looks to the moment that he fired the shots and the time immediately prior to that. During that time, Heroux was no longer in danger himself. Accordingly, whether Heroux's decision to fire on Williams' car was objectively reasonable depends on whether Strickland was in danger. As discussed above in the section pertaining to

Strickland, there is a genuine issue of material fact as to whether Strickland was in danger. Heroux's own testimony creates a reasonable inference that Strickland might have been out of harm's way. Accordingly, the Court cannot grant Heroux summary judgment either.

The Court now turns to whether Williams' Fourth Amendment right was clearly established at the time of the incident. In 1985, the Supreme Court held that the Fourth Amendment limited a police officer's use of deadly force to those situations, among others, where he has probable cause to believe that a suspect poses an immediate threat of physical harm to the officer or others. *Garner*, 471 U.S. at 11. After the threat of immediate harm has passed, an officer may not use deadly force to apprehend a suspect. *Waterman v. Batton*, 393 F.3d 471, 482 (4th Cir. 2005).

> It is established in this circuit that the reasonableness of an officer's actions is determined based on the information possessed by the officer at the moment that force is employed. To simply view all of the force employed in light of only the information possessed by the officer when he began to employ force would limit, for no good reason, the relevant circumstances to be considered in judging the constitutionality of the officer's actions. We therefore hold that force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.

*Id.* at 481–82 (internal citation omitted). *Waterman* was decided in 2005, and this incident did not occur until 2012. Viewing the evidence in the light most favorable to Williams, Heroux shot him in the back after Heroux was no longer in danger of being run over. Thus, the deadly force that would have been justified at the time Heroux was actually in danger was no longer justified as contemplated by *Waterman*. The same rationale applies to Heroux's claim, discussed at length above, that Strickland was in danger of being run over. Accordingly, the Court concludes that Williams' Fourth Amendment right was clearly established at the time of the incident.

In his reply, Strickland cites *Brown v. Elliott*, 876 F.3d 637 (4th Cir. 2017), in support of an apparent assertion that even if he violated Williams' Fourth Amendment rights, he is still

entitled to qualified immunity because the law was not clearly established. Although Strickland's reply also argues that Williams has not presented a genuine issue of material fact, the Court has already disposed of that argument above. In *Brown*, the Fourth Circuit was confronted with a situation where a police officer fired his gun while he "was leaning into the window of a moving truck, not standing off to the side as the truck passed him without veering in his direction." *Id.* at 644. However, the Fourth Circuit also noted that were it confronted with the facts of *Krein v. Price* or *Waterman v. Batton*, cases holding that "an officer violates the Fourth Amendment by continuing to fire shots at a motorist after the motorist's car has passed the officer," *id.*, it would have concluded that the officers had violated clearly established law. *Id.* It is clear that there is a genuine issue of material fact as to whether Strickland, like the officers in *Krein* and *Waterman*, and unlike the officer in *Brown*, was standing off to the side of Williams' car. Accordingly, the Court rejects Strickland's suggestion that the applicable law was not clearly established based on *Brown*.

Finally, the Court turns to Heroux's statute of limitations argument. Heroux argues that although Williams commenced this action against him before the expiration of the three-year statute of limitations when he filed his initial complaint on March 9, 2015, Williams is nonetheless subject to a statute of limitation defense because he subsequently dropped his claim against Heroux when he filed his first amended complaint on May 14, 2015. As a result, Heroux was not named in this action again until June 12, 2017. Heroux argues that Williams was aware of his involvement in the incident because he properly identified him in his initial complaint and therefore the discovery rule—that the statute of limitations begins to run when a reasonable person is on notice that a claim might exist—does not extend the statute of limitations in this

instance. However, Heroux does not address the fact that Williams' initial complaint, filed within the three-year statute of limitations, included Heroux as a defendant.

Rule 15(c)(1) of the Federal Rules of Civil Procedure dictates when a pleading relates back to the date of the original pleading for statute of limitations purposes. It states in relevant part that an amendment relates back if:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Court concludes that Williams has fully satisfied Rule 15(c)(1)'s requirements for his pleading to relate back to his original complaint. As an initial matter, Williams' original complaint named Heroux as a defendant. Williams' second amended complaint brings claims against Heroux that clearly arise out of the same transaction or occurrence—namely the incident at the Canal Street Apartments. Thus, Rule 15(c)(1)(B) is satisfied. Additionally, with respect to Rule 15(c)(1)(C), Williams' second amended complaint re-alleges claims against Heroux that he made in his original complaint but that were not included in his first amended complaint. Heroux had notice of these claims since he was originally named in the suit, and he at minimum should have known that this action would have been brought against him, but for a mistake as to his identity. As late as Defendants' previous motion for summary judgment, it was not clear which officer shot Williams. As for any argument that Williams intentionally chose to sue Strickland and Criddle, the Supreme Court has stated that:

12

a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549, 130 S. Ct. 2485, 2494, 177 L. Ed. 2d 48 (2010). Heroux has not shown that Williams' choice to remove Heroux was deliberate, much less that such a choice was not the result of a misimpression. Accordingly, the Court concludes that Williams' second amended complaint relates back to his initial complaint.[5]

## CONCLUSION

For the reasons stated herein, it is **ORDERED** that both motions for summary judgment are **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**March 1, 2018
Charleston, South Carolina**

---

5. Although the Court does not doubt its decision, the Court further concludes that equitable tolling would be appropriate here in light of Williams' initial status as a *pro se* litigant. *See Wright v. Officer BJ Sawyer & Officer 2 Unknown*, No. 4:15-cv-2442-BHH-KDW, 2016 WL 3633445, at *5–6 (D.S.C. June 15, 2016).